**In re EL COMANDANTE MANAGEMENT CO., et al., Debtor.**

**Wigberto Lugo–Mender as Litigation Trustee Under El Comandante Racetrack Litigation Trust Agreement and Declaration of Trust, Plaintiff**

**v.**

**Government Communications, Inc.; Gregorio Cortes, et al., Defendants**

**Infocom, Inc.; Gregorio Cortes, et al., Defendants**

**Policom, Inc.; Gregorio Cortes, et al., Defendants.**

**Civil No. 07–1445 (JAG).**

United States District Court, D. Puerto Rico.

Aug. 11, 2008.

---

Luis C. Marini–Biaggi and Ubaldo M. Fernandez–Barrera, O'Neill & Borges, San Juan, PR, for Plaintiffs.

Jason Paul Ramos, Patrick D. O'Neill–Cheyney, O'Neill & Gilmore, San Juan, PR, Christopher A. Robison and Jerry C. Alexander and Rebekah Steely–Brooker, Passman & Jones, Dallas, TX, Eliezer Aldarondo–Ortiz, Michael C. McCall, Aldarondo & Lopez Bras, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a Motion for Partial Summary Judgment submitted by Government Communications, Inc.; Infocom, Inc.; Policom, Inc., ("Defendant Companies"); and Gregorio Cortes, ("Cortes"), (collectively "Defendants"). For the reasons set forth below, the Court **DENIES** Defendants' Motion for Partial Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2004, Housing Development Associates, Inc., ("HDA"), El Comandante Management Co., ("ECMC"), and El Comandante Capital Corp., ("ECCC"), (the "Debtors"), each filed voluntary Chapter 11 proceedings before the Bankruptcy Court. After confirmation of

the Chapter 11 Plan[1], on April 23, 2007, Wigberto Lugo–Mender, ("Plaintiff"), in his capacity as Litigation Trustee of El Comandante Racetrack Litigation Trust Agreement and Declaration of Trust, filed Adversary Proceedings before the U.S. Bankruptcy Court for the District of Puerto Rico, (the "Bankruptcy Court"), to avoid and recover preferential and/or fraudulent transfers from each one of the Defendants. (Adversary Case Nos. 07–00107–ESL, 07–00108–ESL, and 07–00109–ESL). The Adversary Proceedings were brought under 11 U.S.C. §§ 544, 547, 548 and 550, and Articles 1244 and 1250 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 3493 and 3499.

Plaintiff alleges that between October 15, 2000 and October 15, 2004, (the "Petition Date"), one or more of the Debtors made certain transfers of property or interest in their property to Defendant Companies. Allegedly, that property was subsequently transferred by Defendant Companies to Cortes, his wife and their conjugal partnership, other individuals, the Sutano Corp., and/or the partnership Sutano Associates. According to Plaintiff, Defendants received payment from the Debtors on debts owed solely by Equus Entertainment Corp.,[2] and not by the Debtors, at a time when Defendants knew or should have known that the Debtors were insolvent or in the vicinity of insolvency and/or unable to satisfy their obligations as they became due. In the Adversary Proceedings, Plaintiff alleges that transfers made during the 90–day period immediately preceding the Petition Date were fraudulent, or in the alternative, preferential.[3] Plaintiff also alleges that transfers made during the period between ninety (90) days and one (1) year before the Petition Date were fraudulent, or in the alternative preferential, since Cortes was an insider of the Debtors.[4] Furthermore, Plaintiff contends that the transfers made during the 3–year period immediately one (1) year before the Petition Date, were fraudulent.

On May 2007, each one of the Defendants filed a Motion to Withdraw the Reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d).[5] Upon filing of the Motions to Withdraw the Reference, the Adversary Proceedings were assigned Civil Case Numbers 07–1445(JAG), 07–1446(JP), and 07–1447(JAF). The Motions to Withdraw the Reference were all granted and the cases were consolidated under this case, leading case No. 07–1445(JAG). On September 20, 2007 Defendants filed a

---

1. On January 3, 2007 the Bankruptcy Court confirmed the Plan. Accordingly, on January 4, 2007, the "Effective Date" under the Plan occurred. Pursuant to the confirmed Plan, Plaintiff was appointed as the Litigation Trustee of the Litigation Trust. The confirmed Plan transferred to Trustee all of the Debtors' causes of action including the avoidance actions under 11 U.S.C. §§ 544, 545, 547, 548, 549 and, 553(b).

2. Equus Entertainment Corporation was the parent company of HDA, which in turn was the parent company of ECMC and ECCC. Equus Gaming Co. LP, Annual Report EX–21 (Form 10–K)(March 27, 2000), available at www.secinfo.com/duvj5.5Nn.d.htm.

3. "A Trustee may avoid any transfer of an interest of the debtor in property made on or within 90 days before the filing of a Bankruptcy petition." 11 U.S.C § 547(b)(A).

4. A transfer made between 90 days and one year before the filing of a Bankruptcy petition can be avoided if it was made for the benefit of a creditor that at the time of such transfer was an insider. *See,* 11 U.S.C. § 547(b)(B).

5. Government Communications and Policom, filed the Motions to Withdraw the Reference on May 23, 2007. (Docket No. 2 and Civil Case No. 07–1447 Docket No. 2, respectively). Infocom filed the Motion to Withdraw the Reference on May 25, 2007. (Civil Case No. 07–1446 Docket No. 2).

Motion for Partial Summary Judgment arguing that Cortes was never an insider of the Debtors, as defined by the Bankruptcy Code, and that therefore, the Court should dismiss all of Plaintiff's preferential transfer allegations for transfers made outside the ninety (90) days preceding the Debtors' bankruptcy filing. (Docket No. 20). On November 16, 2007, after two requests for extension of time, Plaintiff opposed the Motion for Partial Summary Judgment. (Docket No. 28). Defendants replied on December 28, 2007. (Docket No. 34).

## DISCUSSION

### I. *Standard of Review*

 Rule 56 of the Federal Rules of Civil Procedure states, in its pertinent part, that the Court may grant summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996) (internal quotations and citations omitted). In determining whether any genuine issue of material fact exists, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in the party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

 The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the Court, the burden shifts to the opposing party to demonstrate that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment. *Id.* For issues where the opposing party bears the ultimate burden of proof, the party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 52 (1st Cir.2000).

 It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion'". *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994) (quoting *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation.". *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). "If no genuine issue of material fact emerges from this perscrutation, then the case may be ripe for summary adjudication." *Suarez,* 229 F.3d at 53.

### II. *Defendants' Motion for Partial Summary Judgment*

In their Motion for Partial Summary Judgment, Defendants sustain that there are no genuine issues of material fact as to Cortes' status as an insider. Defendants argue that Cortes could not be an insider because he did not have sufficient authority over the Debtors to dictate cor-

porate policy or to dispose of corporate assets. Defendants also allege that Cortes never made management decisions, directed the Debtors' work performance, nor directed payment of the Debtors' expenses, payroll, or accounts receivable. Moreover, Defendants contend as a defense that Plaintiff's insider allegations are barred by judicial estoppel because in the Statement of Financial Affairs (Form B–7) filed with the Bankruptcy Court, the Debtors did not disclose Cortes as (1) an insider in the list of payments made by the Debtors to insiders within one year immediately preceding the commencement of the bankruptcy filing (item 3(b)); (2) a bookkeeper, accountant or auditor for the Debtors within two years immediately preceding the bankruptcy filing (items 19(a)-(b)); (3) an individual who was in possession of the Debtors' books of account at the time the bankruptcy commenced (item 19(c)); or (4) as current or former partner, officer, director, and/or shareholder of the Debtors (items 21–22).

Plaintiff's reply denies most of the Defendants' allegations only admitting as true that Cortes was not disclosed in the Statement of Financial Affairs as current or former bookkeeper, accountant, auditor, individual in possession of the Debtors' books, partner, officer, director, and/or shareholder of the Debtors. Plaintiff specifically denies the allegation that Cortes was not included in the list of payments to insiders since "substantial payments were made by checks to Policom, Infocom, and Government Communications for the benefit of Cortes." Plaintiff's position is that Cortes, as the sole owner or principal of Policom, Infocom, and Government Com-

munications, is the alter ego of each. Plaintiff includes three pieces of evidence to support his claim that Cortes was an officer for the Debtors or alternatively, a person who, during pertinent time periods, shared control over the Debtors: two sworn declarations[6] and a Request for Proposal ("RFP") in which Cortes was identified as the contact on behalf of the Debtors for purposes of RFP responses or questions.

### III. *Analysis*

#### A. *Lack of Record Citation*

■■■■ As an introductory matter, we address the issue brought forth by Defendant asking the Court to dismiss most of Plaintiff's opposing statements of material fact because they lack a record citation as required by the Local Rules. Local Rule 56(c) requires "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." *See* Local Rule 56(c). *Hernandez v. Philip Morris USA, Inc.,* 486 F.3d 1, 6–7 (1st Cir.2007). Local Rule 56(e) further states that "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Therefore, if the party opposing summary judgment fails to comply with Local Rule 56(c), the Court has the discretion to treat the moving party's statement of facts as uncontested.[7] *Alsi-*

---

6. The two sworn declarations submitted were: a declaration by trustee Wigberto Lugo Mender dated November 15, 2007, ("the Mender Declaration"), and a declaration by Stanley Pinkerton, former Chief Financial Officer, ("CFO"), for the Debtors dated April 11, 2007, ("the Pinkerton Declaration").

7. This does not mean that by accepting the moving party's uncontested facts as true, summary judgment will be granted in its fa-

na–Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir.2005). Local Rule 56(c) is an anti-ferret rule that "aims to make the parties organize the evidence rather than leaving the burden upon the district judge." *Id.* at 80. In this case, Plaintiff's opposition contains a statement of material facts that admits, denies, or qualifies, paragraph by paragraph, the assertions presented by Defendants in their Motion for Partial Summary Judgment. Moreover, Plaintiff's opposing statement and the case record are not complex or span multiple documents. Therefore, the lack of record citation does not, in this particular case, preclude the Court from effectively determining whether there are triable issues of material fact nor does it force the Court to "ferret through the records." As such, the Court will exercise its discretion in accepting Plaintiff's statement.

### B. *Judicial Estoppel*

 Defendants claim that Plaintiff's insider allegations are barred by judicial estoppel. The doctrine of judicial estoppel bars a party who successfully urges a particular position in a legal proceeding from subsequently taking a contrary position. *Re–Ace, Inc. v. Wheeled Coach Indus.*, 317 F.Supp.2d 84, 85 (D.P.R.2004). "The purpose of judicial estoppel is to protect the integrity of the courts not to punish adversaries or protect the litigants." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 213 (5th Cir.1999). In order for judicial estoppel to apply, a litigant "must, in effect, have made a bargain with the tribunal of the first proceeding by making certain representations to the tribunal in order to obtain a particular 'benefit' from the tribunal." *UNUM Corp. v. United States*, 886

F.Supp. 150, 158 (D.Me.1995) (internal citations omitted).

 Specifically, Defendants argue that because Debtors failed to disclose Cortes in their Statement of Financial Affairs, as submitted to the Bankruptcy Court, Plaintiff is estopped from claiming insider status for Cortes. This Court finds that Defendants' argument is meritless because "[w]hen seeking to avoid a preferential transfer the trustee is not asserting a cause of action belonging to the debtor but asserting an action in a representative capacity for general unsecured creditors." *In re Best Pack Seafoods, Inc.*, 29 B.R. 23, 24 (Bankr.D.Me.1983) (citing *Boyle Co. v. Wells (In re Gustav Schaefer Co.)*, 103 F.2d 237, 241 (6th Cir.1939), *cert. denied*, 308 U.S. 579, 60 S.Ct. 96, 84 L.Ed. 485, (1939)). "[I]n an action to recover a preference, representations made by the bankrupt are not material. . . . In respect to the representations, there is no privity between the trustee and the bankrupt and the doctrine of estoppel is inapplicable to the trustee." *In re Best Pack Seafoods, Inc.*, 29 B.R. at 23. (citing *Teiger v. Stephan Oderwald, Inc.*, 31 F.Supp. 626, 627 (D.N.Y.1940)). As such, Defendants' argument that Plaintiff's insider allegations are barred by judicial estoppel will not be considered by this Court.

### C. *Argument to strike Plaintiff's evidence*

Of the three exhibits submitted by Plaintiff (with his opposition to Defendants' Motion for Partial Summary Judgment), Defendants oppose the admission of the RFP on the grounds that it is not authenticated as required in Fed.R.Civ.P.

vor. Granting or denying moving party's motion for summary judgment will be based on the uncontested facts and other evidentiary facts on record. *Mariani–Colon v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 4 (1st Cir.2003). *See also Alsina–Ortiz* 400 F.3d at 81.

56(e) and also oppose the admission of the Pinkerton Declaration because it contains conclusory allegations and hearsay.

### 1. RFP

Fed.R.Civ.P. Rule 56(e) requires that "if a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." The RFP document is referred to in both the Mender Declaration and the Pinkerton Declaration. However, it is neither signed, sworn nor certified.

■■■■■ "To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir.2000)(internal citations omitted). Moreover, neither the Mender nor the Pinkerton Declaration attest to the authenticity of the RFP and Plaintiff has not authenticated it by other means. As such, the RFP remains unauthenticated. Accordingly, this Court will not consider the RFP submitted by Plaintiff in ruling on Defendants' Motion for Partial Summary Judgment. *See e.g., Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2nd Cir.1999).

### 2. Pinkerton Declaration

■■■■ Defendants first contend that assertion No. 6 in the Pinkerton Declaration, which reads: "Mr. Thomas Wilson, Mr. James Wilson, and Mr. Gregorio Cortes have known or should have known of Debtors' insolvency during the period described in the preceding paragraph.", is conclusory. The Court has reviewed the Pinkerton Declaration and finds that indeed the objected statement is conclusory in nature and repeats the allegations in Plaintiff's Complaint without offering additional factual data to support it. A such, that portion of the Pinkerton Declaration is inadmissible as evidence to consider partial summary judgment.

■■■■■ Defendants next argue that the Pinkerton Declaration should be totally excluded as inadmissible hearsay. Hearsay is defined by Fed.R.Evid. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment. *Vázquez v. Lopez–Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). *See also*, Fed. R.Civ.P. 56(e). Stanley Pinkerton, under penalty of perjury, declared that he was the former CFO for the Debtors from September 2000 through January 4, 2007. The transfers Plaintiff is seeking to avoid took place during the period of time that Stanley Pinkerton served as CFO for ECMC and as acting CFO for ECCC and HDA. Furthermore, this is the period that, according to Plaintiff, the Debtors were insolvent and Cortes knew or should have known about it. As such, this Court holds that Stanley Pinkerton's declarations are based on his personal knowledge because of the position he held at the Debtor Companies, the access he had (as CFO) to the Debtors' financial information and records, and the control he maintained on the Debtors' payments and/or transfers. Accordingly, the Pinkerton Declaration (excluding assertion No.6) will be considered for purposes of ruling on Defendants' Motion for Partial Summary Judgment.

### D. Cortes' Insider Status

■■■■■ Defendants contend that Cortes is not an insider of the Debtors as defined by the Bankruptcy Code or case law because he is not, and never has been an officer, director, partner, shareholder, officer, manager, member, or a relative of

neither, for the Debtors. Section 101(31) of the Bankruptcy Code provides a list of persons or entities that qualify as an "insider," however, this list is not exhaustive.[8] In its rules of construction, the Bankruptcy Code defines the terms "include" and "including" as not limiting. 11 U.S.C.S. § 102(3). Courts have widely agreed that the use of the word "include" evidences the expansive view of the term "insider." *E.g., In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 210 (5th Cir. 1983). In addition to the statutory list of insider qualifiers, "an insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." *Grossman v. Charmoy (In re Craig Sys. Corp.)*, 244 B.R. 529, 539 (Bankr. D.Mass.2000). In order to qualify as an insider, the "person must have considerable control or a high likelihood of control over a debtor." *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 285 (Bankr. E.D.Va.1999).

 In light of the definition of an insider, Cortes could still qualify as an insider even if, as contended by Defendants, he is not and has never been an officer, director, partner, shareholder, officer, manager, member, or a relative of neither, for the Debtors. Moreover, Cortes could also qualify as an insider of the Debtors even if, as admitted by Plaintiff, he was not disclosed in items 19(a)-(c), 21, and 22 of the Debtors' Statement of Financial Affairs. As such, Defendants' argument that Cortes is not an insider for

lack of a title are unavailing. Lack of a title is not conclusive as to insider/outsider status because said status is a question of control.

 Because the insider definition under 11 U.S.C. § 101(31) is not exhaustive, Courts have held that "insider status is determined by a factual inquiry into the debtor's relationship with the alleged insider, including whether the debtor and the alleged insider dealt at arms length with the debtor." *See, e.g., In re Holloway*, 955 F.2d 1008, 1014 (5th Cir.1992); *In re Missionary Baptist Foundation, Inc.*, 712 F.2d at 210 ("determination of insider status is a matter of fact."). As such, insider status must be determined on a case by case basis through examination of the totality of the circumstances and the creditor's degree of involvement in the debtor's affairs. *In re Chas. P. Young Co.*, 145 B.R. 131, 136 (Bankr.S.D.N.Y.1992).

According to Plaintiff, Cortes "was part of a committee of officers formed to solicit investment proposals for the Debtors." Plaintiff's allegation is supported by the Pinkerton Declaration. Cases that have considered insider status in the context of preferential transfers have focused on two factors in making the determination: (1) the closeness of the relationship between the transferee and the debtor, and (2) whether the transactions between the transferee and the debtor were conducted at arm's length. *E.g., In re Holloway* 955 F.2d at 1011. The Bankruptcy Court in-

---

8. Bankruptcy Code § 101(31) states, in its pertinent part, as follows: (B) If the debtor is a corporation the term insider *includes*—a director of the debtor; an officer of the debtor; a person in control of the debtor; a partnership in which the debtor is a general partner; a general partner of the debtor; or a relative of a general partner, director, officer, or person in control of the debtor; (C) If the debtor is a partnership the term insider *in-* *cludes*—a general partner in the debtor; a relative of a general partner in, general partner of, or person in control of the debtor; a partnership in which the debtor is a general partner; a general partner of the debtor; or a person in control of the debtor; ... (E) An affiliate, or insider of an affiliate as if such affiliate were the debtor; and (F) A managing agent of the debtor. 11 U.S.C. § 101(31). (emphasis added)

cluded in *Schreiber v. Stephenson (In re Emerson)*, 235 B.R. 702, 707 (Bankr. D.N.H.1999), a list of the factual elements that courts have used when determining whether a transferee is an insider. The list includes the following:

1. Whether the loan made to the debtor was documented (e.g., promissory note, mortgage and specified repayment terms);

2. Whether the loans were made on an unsecured basis and without inquiring into the debtor's ability to repay the loans;

3. Whether the transferee knew that the debtor was insolvent at the time the debtor made the loans or recorded the security agreements;

4. Whether there were numerous loans between the parties;

5. Whether there were any strings attached as to how the debtor could use loan proceeds;

6. Whether the loans were commercially motivated;

7. Whether the transferee had an ability to control or influence the debtor;

8. Whether there was a personal, business, or professional relationship between the transferee and the debtor allowing the transferee to gain an advantage such as that attributable simply to affinity;

9. Whether the transferee had authority to make business decisions for the debtor;

10. Whether there is evidence of a desire to treat the transferee differently from all other general unsecured creditors;

11. Whether there was an agreement among the parties to share profits and losses from business transactions.

Some of the factual elements enumerated in *In re Emerson*, which are indicative of an insider status, are supported by the Pinkerton Declaration. The Pinkerton Declaration states that "[a]t all times since October 15, 2000 and October 15, 2004, the Debtors were insolvent." It further states that "[s]ince at least late 2003 and early 2004, and continuing through October 15, 2004, Cortes was part of a committee of officers formed to solicit investment proposals for the Debtor's assets and operations." The Pinkerton Declaration concludes by stating that the transfers Plaintiff is trying to avoid "were received by each of Policom, Infocom, and Government Communications in payment of debts on invoices directed and addressed to Equus Entertainment Corp." On the other hand, Defendant's Motion for Partial Summary Judgment is mainly based on four sworn affidavits that contend Cortes was not an insider for the Debtors.

It is clear that a credibility determination is necessary to dispose of the matter before the Court. In order to determine whether Cortes was an insider, the factfinder must credit one of the parties' accounts of the facts regarding his "control" over the Debtors. Confronted with a credibility determination, which is not proper to make when ruling on a motion for summary judgment, and taking into account that in adjudicating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," we conclude that there is a genuine issue of material fact as to Cortes' relationship with the Debtors and his ability to exert control over them. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. As such, the motion for partial summary judgment must be denied.

## CONCLUSION

For the reasons stated above, this Court **DENIES** the Defendants' Motion for Par-

tial Summary Judgment. (Docket No. 20). Plaintiff's request for additional time to conduct discovery pursuant to Fed. R.Civ.P. 56(f) is **GRANTED.**

IT IS SO ORDERED.